

Ronald P. Pope
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS  66614
785/273-8002
785/273-0744 [Fax]
E-mail:  ron@ralstonpope.com
          and
Joseph Meltzer
Edward W. Ciolko
Schiffrin & Barroway, LLP
Attorneys at Law
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 822-0242 - Direct Line
(610) 667-7056 - FAX
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
## TOPEKA DIVISION

RICHARD A. TOLEDO, on behalf of himself and all others similarly situated,

        Plaintiff,

vs.

WESTAR ENERGY, INC., DAVID C. WITTIG, PAUL R. GEIST, BRUCE A. AKIN, LARRY D. IRICK and UNKNOWN FIDUCIARY DEFENDANTS 1-100,

        Defendants.

Civil Action No. **03-4032-JAR**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

Plaintiff Richard A. Toledo, a participant in the Western Resources, Inc. Employees' 401(k) Savings Plan (the "Plan"), on behalf of himself and a class of all others similarly situated, alleges as follows:

1

## INTRODUCTION

1.     This is a class action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of the participants in and beneficiaries of the Plan, a 401(k) plan established and sponsored by Westar as a benefit for its employees.

2.     401(k) plans confer tax benefits on participating employees to save for retirement and/or other long-term goals.  An employee participating in a 401(k) plan may have the option of purchasing the common stock of his employer, often the sponsor of the plan, as part of his/her retirement investment portfolio.  Investment in Westar Energy, Inc. ("Westar" or the "Company") common stock is one of the investment alternatives in the Plan.

3.     Plaintiff Richard A. Toledo was an employee of Westar and is a participant in the Plan.  Plaintiff's retirement investment portfolio includes Westar stock.  Plaintiff alleges that defendants, as fiduciaries of the Plan, breached their duties to him and to the other participants and beneficiaries of the Plan in violation of ERISA § 409, 29 U.S.C. § 1109, particularly with regard to the Plan's holdings of Westar stock.

4.     Defendants are liable under ERISA to restore losses sustained by the Plan participants as a result of defendants' breaches of their fiduciary obligations.

5.     Because his claims apply to the Plan's participants and beneficiaries as a whole, and because ERISA authorizes a participant such as plaintiff to sue for plan-wide relief for breaches of fiduciary duty, plaintiff brings this action on behalf of himself and all the participants and beneficiaries of the Plan who sustained losses during the relevant period.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

2

1331; 1367 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. §

1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary

breaches for which relief is sought occurred in this district, and/or some defendants reside or

maintain their primary place of business in this district.

## THE PLAN

8.     The Westar Resources, Inc. Employees' 401(k) Savings Plan is an "employee

pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).  Further, the

Plan is an "eligible individual account plan" within the meaning of section § 407(d)(3) of

ERISA, 29 U.S.C. § 1107(d)(3), and is a "qualified cash or deferred arrangement" within the

meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k).  The relief requested in this action is for the

benefit of the Plan and its participants/beneficiaries.

9.     The Plan is sponsored by Westar.

10.    Participants in the Plan are permitted to contribute up to 1% to 14% of pre-tax

earnings and/or between 1% to 4% of eligible after-tax earnings.  Included among the Plan's

eight available investment alternatives is the Western Resources, Inc. Common Stock Fund

("Westar Fund" or "Westar stock" or "Company stock").  The Plan is available automatically to

all Westar employees at the beginning of the first calendar month after they begin their

employment.

11.    Westar matches employee contributions up to a maximum of 50% of the first six-

percent of participant's contributions. The matching ratio is 65% for participants who are

members of collective bargaining groups.  According to Westar's 11-K Securities and Exchange

Commission ("SEC") filing for fiscal year ending December 31, 2001, the Company may match

3

individual participants' contributions with either Westar common stock or cash, at the Company's option. If Company matching contributions are made in the form of Company stock, such contributions may not be transferred to other investment funds.

12.     The Plan is administered by the Company's Investment and Benefits Committee.

13.     Upon information and belief, defendants include named and de facto fiduciaries with respect to the Plan. All defendants exercised discretionary authority or control regarding management of the Plan; management of the Plan's assets; and/or administration of the Plan.

## PARTIES

### Plaintiff

14.     Plaintiff Richard A. Toledo worked for Westar, is a participant in the Plan pursuant to § 3(7) of ERISA, 29 U.S.C. § 1102(7), and continues to hold Westar shares in his retirement investment portfolio.

### Defendants

15.     Defendant Westar Energy, Inc., formerly called Western Resources, Inc., is incorporated in the state of Kansas, and maintains its corporate headquarters at 818 South Kansas Avenue, Topeka, Kansas 66612. According to Westar's 2001 Annual Report, the Company provides "electric generation, transmission, and distribution services to approximately 640,000 customers in Kansas and monitored security services to over 1.2 million customers in North America and Europe."

16.     Upon information and belief, Westar is a fiduciary of the Plan within the meaning of ERISA in that it exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. Westar at all times acted through its officers and employees who were appointed by the Company to perform

4

Plan-related fiduciary functions, and who did so in the course and scope of their employment. Westar had, at all applicable times, effective control over the activities of such officers and employees, including their Plan-related activities. Through its Board of Directors, or otherwise, Westar had the authority and discretion to hire and terminate said officers and employees. Westar also had the authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plan. Additionally, by failing to properly discharge their fiduciary duties under ERISA, the officer and employee fiduciaries breached duties they owed to Plan participants and their beneficiaries. Accordingly, the actions of the Plan's Investment and Benefits Committee members and other employee fiduciaries are imputed to Westar under the doctrine of *respondeat superior*, and Westar is liable for these actions.

17.     Defendant David C. Wittig ("Wittig") was Westar's Chairman of the Board ("Chairman"), CEO, and President during a significant portion of the Class Period. Upon information and belief, Wittig was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

18.     Defendant Paul R. Geist ("Geist") was a senior vice president of the Company and Westar's Chief Financial Officer ("CFO") during the Class Period. Geist signed Westar's 11-K submission to the SEC for fiscal year 2002 on behalf of the Plan. Upon information and belief, Geist was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

19.     Defendant Bruce A. Akin ("Akin") signed Westar's 2002 11-K submission to the SEC as a member of the Plan's Investment and Benefits Committee. Upon information and

5

belief, Akin was a fiduciary of the Plan within the meaning of ERISA in that he exercised

discretionary authority with respect to management and administration of the Plan and/or

management and disposition of the Plan's assets.

20.     Defendant Larry D. Irick ("Irick") signed Westar's 2002 11-K submission to the

SEC as a member of the Plan's Investment and Benefits Committee. Upon information and

belief, Irick was a fiduciary of the Plan within the meaning of ERISA in that he exercised

discretionary authority with respect to management and administration of the Plan and/or

management and disposition of the Plan's assets.

21.     Unknown Fiduciary Defendants 1-100 are residents of the United States and are

or were fiduciaries of the Plan during the Class Period. These defendants may include members

of the Investment and Benefits Committee. Their identities are currently unknown to plaintiff;

once their identities are ascertained, plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself/herself and the following

class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Plan at any time
> between March 30, 2001 and the present (the "Class Period").

23.     Excluded from the Class are the defendants, any entity in which the defendants

have a controlling interest, or is a parent or subsidiary of or is controlled by the Company, and

the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors

and assigns of the defendants. The members of the Class are so numerous that joinder of all

members is impracticable. While the exact number of Class members is unknown to plaintiff at

this time, and can only be ascertained through appropriate discovery, plaintiff believes there are,

6

at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

24.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)    whether defendants each owed a fiduciary duty to plaintiff and members of the Class;

        (b)    whether defendants breached their fiduciary duties to plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

        (c)    whether defendants violated ERISA; and

        (d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

25.    Plaintiff's claims are typical of the claims of the members of the Class because plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27.    Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

28.    Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for defendants; (ii) defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final

injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

29.     There are one or more putative securities class actions pending against Westar and other defendants.  The claims herein arise under ERISA and related principles, and are not being asserted by the plaintiffs in the securities class actions.  The named plaintiffs in those class actions do not adequately represent the plaintiff or the Class herein with respect to ERISA claims and may be subject to defenses and limitations of liability under the Private Securities Litigation Reform Act, 15 U.S.C. § 74 u-4 *et seq.*, and other statutes or Rules that do not apply to the claims asserted herein.

30.     As required by ERISA, defendants carry insurance for claims asserted herein that may not be available to the defendants in the securities class actions.

31.     There are people in this Class who are not members of the classes or putative classes in the securities class action cases.

## DEFENDANTS' FIDUCIARY STATUS

32.     During the Class Period, upon information and belief, defendants had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets, and had discretionary authority or responsibility for the administration of the Plan.

33.     During the Class Period, all of the defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law interpreting that section.

34.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." §

8

402(a)(1), 29 U.S.C. § 1102(a)(1).

35.     Upon information and belief, instead of delegating all fiduciary responsibility for the Plan to external service providers, Westar chose to comply with the requirement of § 402(a)(1) by internalizing this fiduciary function.

36.     The Plan is administered by Westar through the Plan's Investment and Benefits Committee. Upon information and belief, the Investment and Benefits Committee consisted of, at least in part, employees of the Company appointed by the Company's Board of Directors, and was responsible for, *inter alia*, establishing investment objectives and policies for the entire Plan – including investment in Company Stock . The actions of employee-fiduciaries were on behalf of and are attributable to the Company.

37.     Defendant Westar was a fiduciary of the Plan because, *inter alia*, of its control over the Investment and Benefits Committee -- the administrator of the Plan and a Named Fiduciary. Westar had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets, and had discretionary authority or responsibility for the administration of the Plan.

38.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), but also any other persons who act in fact as fiduciaries, *i.e.*, performed fiduciary functions. Section 3(21)(A)(I) of ERISA, 29 U.S.C. §1002(21)(A)(I), provides that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets . . . ." During the Class Period, defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA.

39.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable. To the extent any of the

9

defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

40.     During the Class Period, Westar's direct and indirect communications with Plan participants included statements regarding investments in Company stock.  These communications included, but were not limited to, SEC filings, annual reports, press releases, and Plan documents (including a Summary Plan Description) which incorporated and/or reiterated these statements.  Westar also acted as a fiduciary to the extent of this activity.

## SUBSTANTIVE ALLEGATIONS

41.     From March 30, 2001 through at least November 15, 2002, Westar issued a number of press releases and submitted related SEC filings concerning the Company's earnings growth and overall financial performance for fiscal 2000 & 2001, as well as the first two quarters of fiscal 2002.  These reports all indicated that Westar's earnings were consistently growing, the Company's overall health and profitability were good, and that Westar was following Generally Accepted Accounting Principles when building its financial statements. These public pronouncements included:

A March 30, 2001 press release and corresponding April 2, 2001 10-K SEC "annual report" submission that reported a huge increase in Company earnings per share from fiscal 2000 to fiscal 2001, with Westar booking total revenue for the year ending December 30, 2001 of over $2.3 billion;

May and August 2001 press releases and corresponding 10-Q SEC submissions boasting of increased energy sales for the first and second quarters of 2001 as compared with the same periods of fiscal 2000;

A February 18, 2002 press release announcing that the Company reported a consolidated net loss for the fiscal year ending December 30, 2001 of $0.31 per share;

10

An April 22, 2002 press release and corresponding May 15, 2002 10-Q SEC submission reporting an increase in operating income per share from $0.06 per share during the first quarter of fiscal 2001 to $0.36 per share during the first quarter of 2002.

An August 2, 2002 press release and corresponding August 14, 2002 10-Q SEC submission proclaiming second quarter 2002 earnings of $0.18 per share, as compared to a loss of $0.43 per share reported in the second fiscal quarter of 2001.

42.     These public statements, designed to accurately portray the ongoing health and profitability of Westar, and therefore the attractiveness of Westar stock as a Plan investment alternative, were inaccurate, misleading, and omitted material information necessary to Plan participants evaluating investment alternatives presented to them as part of their 401(k).

43.     The statements summarized above concerning the Company's financial performance during 2000 & 2001 failed to disclose that Westar had engaged in "round-trip trading" during those years in an attempt to artificially, and unlawfully, prop up Company earnings figures and maintain its stock price. "Round-trip" or "wash trades" of any set of assets, here units of energy/electricity, according to *Barron's Dictionary of Accounting Terms,* 3rd. Ed., is a "transaction or sale that is nullified by its reversal or offset within a short time of its initiation. Wash sales typically were used to induce trading activity by artificially inflating activity and price." The Federal Energy Regulatory Commission ("FERC") defines "round trip" or "sell/buyback" trading in electricity trading as trading "that involves the sale of an electricity product to another company together with a simultaneous purchase of the same product [from the original "buyer" company] at the same price." In the energy trading industry in recent years, a number of firms have been accused of utilizing these essentially economically worthless trades to artificially increase trading volume and, therefore, earnings and stock price.

44.     Westar's activities inflated the Company's energy trading volume significantly

11

over 2000-2001, and artificially pumped up earnings by millions of dollars for each fiscal year. Specifically, the inflated earnings reported for fiscal 2001 helped Westar present a significantly smaller net loss for the year than it would have if not for its booking of "round trip" trades.

45.     Westar's primary trading partner in these round-trip trades, upon information and belief, was the Cleco Corporation ("Cleco") and its affiliates.

46.     Additionally, Westar's reported financial results for the first two quarters of 2002 were inaccurate, misleading and incomplete, in that the Company, on top of continuing to engage in economically meaningless "round-trip" energy trades with Cleco, improperly recognized impairment charges to its financial statements resulting from Westar's ownership interest in Protection One, Inc., ("Protection One"),one of the nation's largest providers of monitored security services.

47.     On November 1, 2002, the Company began to let the truth come out regarding its past public statements regarding its 2000 through 2002 financial reports.  In a press release published that day, the Company announced that it would restate its first and second quarter 2002 earnings figures to reflect greater accounting impairment charges against earnings than previously reported due to its significant ownership interest in Protection One.  The additional impairment recognition would require the Company to record a non-cash charge of $93 million, or approximately $1.29 per share, for the six-month period ending June 20, 2002 (the Company's first two fiscal quarters of 2002).

48.     In a press release dated November 11, 2002, and a related November 15, 2002 SEC 10-Q submission, Westar reported that its consolidated earnings for the third quarter 2002 had improved by $0.10 per share over that reported during the same period of fiscal 2001.

49.     On December 26, 2002, Westar unwrapped an unwelcome holiday present for its Plan participants, and the general investing public at large.  The Company announced in a press

release that it had received, on December 16, 2002, a subpoena from FERC seeking details

surrounding its power trades with Cleco and its affiliates, documents concerning power

transactions between Westar's system and marketing operations, and information on power

trades in which Westar or other trading companies acted as intermediaries.

As stated above, among the issues being reviewed by FERC are

transactions Westar conducted with third parties to facilitate power transfers between Westar

Energy's system and marketing operations.  These transactions and other power marketing and

trading activities were recently under review within a Kansas Corporation Commission-ordered

audit of Westar marketing operations that were undertaken by Navigant Consulting.

50.     The December 26, 2002 announcement was not received well by the stock market.

The price of Westar stock fell 7.6% in trading on December 30, 2002, the next business day after

the Company's December 26, 2002 announcement.

## CLAIMS FOR RELIEF

51.     At all relevant times, defendants were and acted as fiduciaries within the meaning

of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  ERISA imposes strict fiduciary duties upon

plan fiduciaries.  ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

(1)[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of

the participants and beneficiaries and –

    (A)    for the exclusive purpose of
        (I)    providing benefits to participants and their beneficiaries; and
        (ii)    defraying reasonable expenses of administering the plan;
    (B)    with the care, skill, prudence, and diligence under the circumstances then
        prevailing that a prudent man acting in a like capacity and familiar with
        such matters would use in the conduct of an enterprise of like character
        and with like aims;
    (C)    by diversifying the investments of the plan so as to minimize the risk of
        large losses, unless under the circumstances it is clearly prudent not to
        do so; and
    (D)    in accordance with the documents and instruments governing the plan

13

insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

52.     ERISA also imposes strict co-fiduciary duties on plan fiduciaries.  ERISA § 405;

29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(a)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
(b)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(c)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## COUNT I

### (Failure to Disseminate Necessary Information)

53.     Plaintiff incorporates the allegations contained in the previous paragraphs of thus

Complaint as if fully set forth herein.

54.     ERISA fiduciaries have a duty to speak truthfully, to not mislead participants, and

to disclose truthful information on their own initiative when participants need such information

to exercise their rights under the plan.  In a plan with various funds available for investment, this

duty to inform and disclose includes: (1) the duty to provide to plan participants material

information of which the fiduciary has or should have knowledge that is sufficient to advise the

average plan participant of the risks associated with investing in any particular fund; and (2) the

duty to refrain from making material misrepresentations.

55.     A fiduciary must not only disclose complete and correct material information, but

must provide information (even where not requested) if failing to convey the information would

be harmful to participants.  In essence, a fiduciary must act to protect participants from losses

14

when he knows or should know of facts that cast doubt on the soundness of certain plan investment alternatives.

56.     Defendants breached their fiduciary duties by failing to provide Plan participants and beneficiaries with complete and accurate information regarding investment in Westar stock, including, but not limited to: failing to disclose material accounting and related sham "wash" or "round trip" energy trading irregularities, and failing to inform, in a timely fashion, Plan participants concerning financial reporting irregularities stemming from the Company's ownership interest in Protection One that would lead to a material accounting charge. Westar provided false and/or misleading earnings and revenue estimates despite having knowledge of these fraudulent activities; and, continually, through press releases, SEC filings, and elsewhere, characterized Westar as a healthy, growing, business concern; specifically lauding the Company's energy trading operations as a driving force of Westar's recent earnings growth. Both of these Company practices artificially inflated the value of Westar stock and misled participants and beneficiaries regarding the soundness and prudence of investing their retirement benefits in Westar stock. This information was especially critical because investment in Westar stock is, by definition, an undiversified investment in a single company's common stock and, as such, carries with it an inherently high degree of risk.

57.     Under ERISA, fiduciaries are responsible for the prudence of plan investments unless plan participants and beneficiaries themselves exercised effective and informed control over their individual accounts. ERISA § 404(c), 29 U.S.C. § 1104(c).

58.     Plan participants and beneficiaries did not exercise such control in this case as defendants failed to provide them with complete and accurate information regarding Westar's true business health and forward-looking profitability, and misled them regarding the appropriateness of Westar stock as a Plan investment. Therefore, defendants remained

15

responsible for ensuring that Plan assets were invested prudently, and are liable for losses that were incurred as a result of imprudent investments.

## COUNT II

### (Failure to Diversify Plan Assets)

59.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

60.     Defendants breached their fiduciary duty to diversify Plan assets in order to prudently reduce the risk of large losses inherent in placing a large percentage of any investment portfolio, or allowing such a percentage to accumulate over time, in the shares of stock of any one publicly traded corporation.

61.     As a result of defendants allowing an imprudently high percentage of the Plan's assets to be held in the form of Westar common stock, plaintiff and members of the Class, as well as the Plan as a whole, suffered losses, the amount of which will be determined at trial.

## COUNT III

### (Failure to Monitor Investment Alternatives)

62.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

63.     A fiduciary's duties of loyalty and prudence also entail a duty to continually monitor and, if necessary and prudent, conduct independent investigations into the relative merits of all the investment alternatives available in a plan, including employer securities, to ensure that each investment is a suitable and prudent option for the plan.

64.     Defendants breached this duty of monitoring and investigation with respect to the Company stock investment alternative. By no later than the beginning of the Class Period, defendants could and should have made a determination that Westar stock was not a suitable and

16

prudent investment alternative for the Plan, either for a participant's discretionary account or for the Company's matching investments. By the beginning of the Class Period, if not before, Westar stock was plainly an unsuitable and imprudent investment option for the Plan and its participants and beneficiaries.

65.     The Company, Wittig, Geist, Akin, Irick and the other as yet unnamed defendants further breached their fiduciary duties by not monitoring or putting in place procedures to monitor the actions of the Plan's Investment and Benefits Committee and other Plan fiduciaries.

### COUNT IV

### (Failure to Avoid Conflicts of Interest)

66.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

67.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an unwavering eye toward the interests of the plan's participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

68.     Defendants breached their fiduciary duty to avoid conflicts of interest (and to promptly resolve them) by: continuing to allow investment in Westar stock as an investment alternative within the Plan during the Class Period; failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment(s) in Company stock and the quality and quantity of the information provided to Plan participants and beneficiaries concerning such investment; and, generally, by failing to take the necessary steps to ensure that the Plan's fiduciaries did not suffer from conflicts of interest, which clearly made the Company Stock  an unsuitable investment alternative for the Plan.

17

## COUNT V

### (Breaches of Co-Fiduciary Duties)

69.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

70.     Each defendant, in addition to their individual breaches of fiduciary duty, knowingly participated in the above-described fiduciary breaches of its co-fiduciaries, enabled their co-fiduciaries to commit such fiduciary breaches by their own failure to comply with the provisions of ERISA § 404(a), 29 U.S.C. § 1104(a), and had knowledge of the breaches of their co-fiduciaries and failed to make reasonable efforts to remedy such breaches.

### State Law Claims

### COUNT VI

### (Breach of Good Faith and Fair Dealing)

71.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72.     That the Defendants collectively, and as individuals, had the duty of recognizing the State of Kansas common law for good faith and fair dealing.  This duty is recognizing the implementation of the Restatement of Torts 2nd.  In the contractual relationship for the request for investment of the retirement funds under the Plan and for the continued investment of the retirement funds under the Plan, the Defendants had a duty to make full and fair disclosure of the factors and circumstances that would be material in the request for investment and in the investment in the Plan.  Those facts and circumstances that are solely in control of the Employer and only known to the employer are material to this contractual relationship and must be disclosed in the manner sufficient so that the Plan members can make informed decisions.

73.     That the Plaintiff operated under a contract with the Defendants for the investment

18

and implementation of retirement funds under the Plan. That this contract of investment is similar to other situated members of the putative class. That it is a contract for the implementation of investment and the investment that is at issue in this matter.

74.     That the Defendants failed to make adequate disclosures either by intent or by neglect of material factors of circumstances as previously set forth in this Complaint. That the failure to make these disclosures that were relevant, important, and necessary for investment decisions of this Plaintiff and other respective class members.

75.     That the failure to make such disclosures was either by neglect or by intent. That whether it be by omission or commission, the Defendants were still charged with the duty of good faith and fair dealing. That failure to make such disclosures as they are materially set forth previously in this Complaint violates this duty.

## Separate State Law Prayer

WHEREFORE, the Plaintiff prays the Court enter an Order sustaining damages in excess of $75,000 as allowed for and stated by the Kansas Code of Civil Procedure, and further, that the Court enter an Order assessing costs in this matter. Further, the Plaintiff requests the Court impanel a jury of their peers pursuant to the Kansas Constitution for the determination of the issues asserted under the common law of the State of Kansas, and in a manner prescribed by the Kansas Code of Civil Procedure.

## NEGLIGENCE

76.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77.     That the Defendants in this matter are charged with acting in an inappropriate, improper manner. That the actions of Defendants as previously set forth in this Complaint constitute negligence. That the negligence of the Defendants are material in the cause of losses

19

to the Plaintiff's valuation in the Plan. That negligence is defined in Kansas as what a reasonable person would do in the same or similar circumstances. That a fiduciary of a Plan has a duty to make adequate disclosures or to not solicit investments without adequate information cannot be had to protect the investments of the individual Plan members. Further, that the fiduciary has a duty and obligation to protect the funds of the Plan members.

78.     The disclosures made to the Plan participants were incorrect and misstated the financial condition of the Company. The Defendants should have known of the accounting irregularities and misstatements and should not have solicited further Plan investment in Defendant's stock without disclosure of the same.

79.     That in this case, the allegations as previously set forth, show that the Defendants, individually and collectively, were negligent in their administration of the Plan and their solicitation of members for investment in the Plan, and in the failure of due diligence to make adequate disclosures of the true financial condition of the Company as it affected the Plan.

### Separate State Law Prayer

WHEREFORE, the Plaintiff prays the Court enter an Order sustaining damages in excess of $75,000 as allowed for and stated by the Kansas Code of Civil Procedure, and further, that the Court enter an Order assessing costs in this matter. Further, the Plaintiff requests the Court impanel a jury of their peers pursuant to the Kansas Constitution for the determination of the issues asserted under the common law of the State of Kansas, and in a manner prescribed by the Kansas Code of Civil Procedure.

### FRAUD

### (In the Alternative to Negligence)

80.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

81.     That if the acts set forth in the Complaint are not by neglect or omission, then they were by co-mission and intent. That the intentional misrepresentation and/or hiding important and/or critical information in regards to an investment constitutes fraud in the State of Kansas. These acts in particular are the ones set forth in this Complaint, as well as the ones of disclosure that were amended after the indictment of Wittig. That those acts, if proven, through intent instead of neglect, would constitute fraud in the State of Kansas.

### Separate State Law Prayer

WHEREFORE, the Plaintiff prays the Court enter an Order sustaining damages in excess of $75,000 as allowed for and stated by the Kansas Code of Civil Procedure, and further, that the Court enter an Order assessing costs in this matter. Further, the Plaintiff requests the Court impanel a jury of their peers pursuant to the Kansas Constitution for the determination of the issues asserted under the common law of the State of Kansas, and in a manner prescribed by the Kansas Code of Civil Procedure.

### CAUSATION

82.     The Plan suffered tens of millions of dollars in losses because substantial assets of the Plan were imprudently invested, or allowed to be invested by defendants, in Westar stock during the Class Period, in breach of defendants' fiduciary duties. This loss was reflected in the diminished account balances of the Plan's participants.

83.     Defendants are responsible for losses caused by participant direction of investment in Westar stock because defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants concealed material, non-public facts from participants, and provided misleading, inaccurate, and incomplete information to them regarding the true health and

21

ongoing profitability of the Company, and therefore its soundness as an investment vehicle. As a consequence, participants did not exercise independent control over their investments in Company stock, and defendants remain liable under ERISA for losses caused by such investment.

84. Defendants are also responsible for all losses caused by the investment of the Plan's Company matching contributions in Westar stock during the Class Period, as defendants controlled the investment, and the investment was imprudent.

85. Had the defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Company stock, eliminating Company stock as an investment alternative when it became imprudent, and divesting the Plan from Company stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered through its continued investment in Company stock.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

86. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

87. With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable

22

alternative investment available. In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

88.    Plaintiff and the Class are therefore entitled to relief from the defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    That the Court certify this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3) with respect to the Class to the extent necessary to effect the purposes of this suit;

B.    That the Court enter Judgment providing the following relief to Plaintiff, and the Class:

(i)    Joint and several liability against defendants, requiring them to make the Plan whole for the losses incurred as a result of their violations of ERISA, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1109(a);

(ii)    Injunctive relief enjoining defendants from continuing to violate their fiduciary duties under ERISA and the Plan documents, pursuant to ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3);

(iii)    Other injunctive and equitable relief as appropriate to remedy the breaches alleged above, pursuant to ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3);

23

(iv)     Reasonable attorneys' fees and costs incurred by Plaintiff and the Class, pursuant
         to ERISA § 502(g), 29 U.S.C. § 1132(g);

(v)      Interest on all Judgment amounts as provided by law; and

(vi)     Such other legal or equitable relief as may be just and proper.

## PRAYER FOR PUNITIVE DAMAGES

Plaintiff reincorporates by reference the allegations set forth above.

That the facts and allegations set forth in Plaintiff's state law claims are proven, in

substantial part, the acts would constitute an award of punitive damages, by each of the

Defendants.

WHEREFORE, Plaintiff prays that the Court on advice of the jury enter an award for

punitive damages in this matter.

Dated: _3-7-03_

_Designated f Place_
_of Trid_
_Topolca /c_

_Ronald P. Pope_ #11913
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
785/273-8002
785/273-0744 [Fax]
E-mail: ron@ralstonpope.com
              and
Joseph Meltzer
Edward W. Ciolko
Schiffrin & Barroway, LLP
Attorneys at Law
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 822-0242 - Direct Line
(610) 667-7056 - FAX
E-mail: jmeltzer@sbclasslaw.com and
eciolko@sbclasslaw.com
ATTORNEYS FOR PLAINTIFF

24